# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# EASTERN DIVISION

| | |
|---|---|
| Serkan Haciosmanoglu, ) ) Plaintiff, ) ) vs. ) ) Leslie D. Tritten, Field Office Director, ) SP-M Field Office, U.S. Citizenship and ) Immigration Services ("USCIS"); David ) Douglas, Director of USCIS, District 15[1]; ) Tracy Renaud, Senior Official Performing ) the Duties of the Director, USCIS; Merrick ) Garland, U.S. Attorney General; and ) Alejandro Mayorkas, Secretary of the U.S. ) Department of Homeland Security, ) ) Defendants. ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** Case No. 3:21-cv-00005 |

Plaintiff Serkan Haciosmanoglu seeks judicial review of a decision by U.S. Citizenship and Immigration Services ("USCIS") to deny his application for naturalization. The Defendants moved to dismiss the complaint on April 21, 2021. Doc. No. 9. Haciosmanoglu responded in opposition to the motion on April 27, 2021. Doc. No. 11. The Defendants filed a reply on May 11, 2021. Doc. No. 12. For the reasons below, the motion is granted.

## I.      BACKGROUND

At the motion to dismiss stage, the Court accepts the complaint's factual allegations as true. See Doc. No. 4. Haciosmanoglu is a citizen and native of Turkey. Id. ¶ 10. He now resides in Fargo, North Dakota. Id. He obtained conditional permanent resident status in February 2013 through his then wife, who is a United States citizen. Id. ¶ 25. USCIS later lifted the conditions

---

[1] David Douglas is now Director of District 32, not District 15.

and granted him lawful permanent resident status.  Id.  He applied for naturalization on December 6, 2017.  Id. ¶ 27.

USCIS denied the application based on a determination that Haciosmanoglu lacked good moral character.  Id. ¶ 31.  For support, USCIS pointed to a July 20, 2015 incident where law enforcement arrested him for domestic assault.  Doc. No. 4-9, p. 2.[2]  Police reports indicate that Haciosmanoglu attempted to take a phone away from his wife by wrapping his arms around her chest from behind and grabbing her wrists.  Doc. No. 10-1, p. 2.  A responding officer observed injuries on her wrists and a tear in her shirt.  Id. at 3.  But from Haciosmanoglu's perspective, he called 911 due to a verbal disagreement with his wife, and law enforcement arrested him after disbelieving his statements.  Doc. No. 4, ¶ 33.  On November 3, 2015, he pleaded guilty to a lesser disorderly conduct offense.  Doc. No. 4-2.  A Minnesota state court imposed no jail time but placed him on probation.  Id.  Haciosmanoglu satisfied the conditions of the plea deal, resulting in case's dismissal on June 6, 2017.  Id.

In addition, USCIS mentioned that Haciosmanoglu had previously been arrested for disorderly conduct on July 23, 2009.  Doc. No. 4-9, p. 2.  That arrest apparently stemmed from a profanity-laden outburst at a bank.  Doc. No. 10-2.  Prosecutors continued the case for dismissal.  Doc. No. 4-1.  Like for the later incident, a Minnesota state court sentenced Haciosmanoglu to probation.  Id.  He met the conditions, prompting dismissal of the case.  Id.

---

[2] Records from Haciosmanoglu's immigration and criminal proceedings merit consideration on a motion to dismiss.  See Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) (explaining that a "district court may take judicial notice of public records and . . . consider them on a motion to dismiss").

Following the denial of his naturalization application, Haciosmanoglu pursued an administrative appeal. Doc. No. 4-6. He received a hearing before an immigration officer. Doc. No. 4-7. On November 10, 2020, USCIS reaffirmed the denial. Doc. No. 10-3.

Haciosmanoglu filed the instant complaint on January 11, 2021. Doc. No. 4. The complaint advances three related claims under the Immigration and Nationality Act ("INA") for judicial review of the denial of his naturalization application. Id. Further, the complaint alleges a violation of the Administrative Procedure Act ("APA") and requests a declaratory judgment. Id.

## II. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal if a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff must plead facts that show more than mere speculation or possibility that a defendant acted unlawfully. Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 371 (8th Cir. 2017) (citing Iqbal, 556 U.S. at 678). Courts must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010)).

While obligated to accept a complaint's factual allegations as true, courts are not required to accept a plaintiff's legal conclusions or a "formulaic recitation of the elements of a cause of

action." In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (quoting Iqbal, 556 U.S. at 678). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. Whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." In re SuperValu, Inc., 925 F.3d 955, 962 (8th Cir. 2019) (citation omitted).

A noncitizen denied naturalization may petition for judicial review in the federal district court for the district where he resides. 8 U.S.C. § 1421(c). The district court reviews USCIS's decision de novo. Id.

### III.  DISCUSSION

The Defendants contend that Haciosmanoglu is ineligible for naturalization because he engaged in criminal conduct that adversely reflects on his moral character within the statutory lookback period. More specifically, the Defendants assert that he committed domestic assault in July 2015, for which he later pleaded guilty to disorderly conduct. Haciosmanoglu disputes that he committed domestic assault. He also argues that his disorderly conduct conviction does not dispositively impugn his moral character. And even if it does, Haciosmanoglu believes that he has sufficiently pleaded extenuating circumstances.

A noncitizen "has no inherent right to naturalization." Ralich v. United States, 185 F.2d 784, 786 (8th Cir. 1950). Because "Congress alone has the constitutional authority to prescribe rules for naturalization," judicial review is limited to ensuring "strict compliance with the statutory conditions precedent." Fedorenko v. United States, 449 U.S. 490, 507 (1981). The applicant bears the burden to prove that he satisfies all the prerequisites for naturalization by a preponderance of the evidence. 8 C.F.R. § 316.2(b).

The lone contested requirement here mandates proof that an applicant "has been and still is a person of good moral character" for the five years immediately preceding his application. 8 U.S.C. § 1427(a). The INA leaves good moral character undefined. Nonetheless, the statutory scheme bars certain classes of persons from establishing good moral character. Examples include those who have given false testimony to obtain immigration benefits or have been convicted of an aggravated felony. See 8 U.S.C. § 1101(f)(1)-(9). Yet that list is not exhaustive. A determination that an applicant is outside the enumerated classes "shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f).

To identify "other reasons," USCIS has promulgated 8 C.F.R. § 316.10. That regulation ordinarily instructs a reviewing entity to assess an applicant's moral character "on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). Even so, "[n]o balancing of factors can occur if [an applicant] lacks good moral character as a matter of law." Olaifa v. Mayorkas, No. 18 CV 6801, 2021 WL 1057736, at *5 (N.D. Ill. Mar. 18, 2021). The regulation goes on to command that an applicant "shall be found to lack good moral character if, during the statutory period" he "committed unlawful acts that adversely reflect on [his] moral character, or was convicted . . . for such acts." 8 C.F.R. § 316.10(b)(3)(iii). The sole exception arises when an applicant "establishes extenuating circumstances." Id. The regulation is accorded judicial deference. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984);

United States v. Suarez, 664 F.3d 655, 660-61 (7th Cir. 2011); United States v. Jean-Baptiste, 395 F.3d 1190, 1194 (11th Cir. 2005).[3]

In sum, the regulation poses three salient questions. First, did Haciosmanoglu commit or sustain a conviction for an unlawful act during the statutory period? Second, if so, does the unlawful act adversely reflect on his moral character? And third, if it does, has he plausibly alleged extenuating circumstances?

As a straightforward starting point, Haciosmanoglu was convicted of an unlawful act during the statutory period. He pleaded guilty to disorderly conduct on November 3, 2015, just over two years before he submitted his naturalization application. To the extent Haciosmanoglu now attempts to contest his conviction, he is collaterally estopped from doing so. See United States v. Aleff, 772 F.3d 508, 510 (8th Cir. 2014).

The Defendants encourage the Court to venture further and conclude that Haciosmanoglu committed domestic assault. But such a determination is premature. Haciosmanoglu's complaint never admits that he committed domestic assault. Instead, he merely acknowledges that law enforcement arrested and initially charged him for that offense. See Doc. No. 4, ¶ 26. Prosecutors later dismissed the charge in favor of a lesser disorderly conduct offense. Nor do the police reports from the incident definitively establish that a domestic assault occurred. Despite his wife's allegations and observed injuries, Haciosmanoglu insists that he called 911 due to a verbal disagreement. At the pleadings stage, the Court cannot determine that Haciosmanoglu committed

---

[3] The Ninth Circuit takes a unique stance, holding that 8 C.F.R. § 316.10(b)(3)(iii) is not a per se bar to naturalization. Hussein v. Barrett, 820 F.3d 1083, 1089 (9th Cir. 2016). Under that approach, a district court confronted with an applicant who committed unenumerated illegal conduct must "consider all relevant factors in making its ultimate determination . . . of good moral character." Id. at 1090. With no precedent from the Eighth Circuit, this Court will adhere to the majority view and defer to the regulation's mandatory language.

domestic assault based on unproven allegations in a police report. The Court will therefore confine analysis to whether the disorderly conduct conviction precludes naturalization.

Even with that narrower focus, though, Haciosmanoglu's disorderly conduct conviction negatively impacts his moral character. A disorderly conduct offense is more than a "mere technical or regulation violation [that] may not be against the standards of an average member of the community." USCIS Policy Manual, Vol. 12, Part F, Ch. 5. And unlike many other misdemeanor offenses, disorderly conduct inherently suggests a moral transgression. Consider the adjective's definition: "Opposed to or violating moral order, constituted authority, or recognized rule or method." Disorderly, Oxford English Dictionary, https://www.oed.com/view/Entry/54865 (last visited July 2, 2021). In that sense, the raison d'etre for a law against disorderly conduct is to penalize aberrant behavior that falls below community standards. Haciosmanoglu pleaded guilty to violating precisely such a law. See Minn. Stat. § 609.72, subd. 1(3) (prohibiting conduct that is "offensive, obscene, abusive, boisterous, or noisy"). As a result, Haciosmanoglu's disorderly conduct conviction adversely reflects on his moral character.

Remaining for resolution, then, is whether Haciosmanoglu has plausibly alleged extenuating circumstances. Extenuating circumstances "must pertain to the reasons showing lack of good character, . . . not to the consequences of these matters." Suarez, 664 F.3d at 662 (quoting Jean-Baptiste, 395 F.3d at 1195). In other words, extenuating circumstances "render a crime less reprehensible than it otherwise would be, or tend to palliate or lessen its guilt." Id. (cleaned up). Administrative guidance counsels that extenuating circumstances generally cannot arise from "conduct or equities (including evidence of reformation or rehabilitation) subsequent to the commission of the unlawful act." USCIS Policy Manual, Vol. 12, Part F, Ch. 5.

Here, the complaint sets out three putative extenuating circumstances—rehabilitation, minor criminal history, and the charge's eventual dismissal.[4]  Doc. No. 4, ¶ 54.  None suffice.  Taking each in turn, post-offense rehabilitation derives from conduct that Haciosmanoglu undertook after commission of the unlawful act.  So rehabilitation in no way "pertain[s] to his culpability" for disorderly conduct "and its negative impact on his moral character."  Jean-Baptiste, 395 F.3d at 1195.  Likewise, "that this appears to have been a one-time offense" during the statutory period does "nothing to mitigate its seriousness."  Olaifa, 2021 WL 1057736, at *7 (quoting Suarez, 664 F.3d at 662).  As a compounding factor, "an applicant's conduct prior to the statutory period is relevant . . . to the extent that it reflects on his . . . moral character within the statutory period."  Nyari v. Napolitano, 562 F.3d 916, 920 (8th Cir. 2009).  Although not committed within the five years preceding his application, Haciosmanoglu's 2009 disorderly conduct offense illustrates a pattern of failure to comport his behavior with the law.  See 8 C.F.R. § 316.10(a)(2) (noting that USCIS may consider conduct prior to the statutory period "if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character").  Finally, the charge's ultimate dismissal relates exclusively to the consequences for the offense, offering nothing to "palliate or lessen its guilt."  Suarez, 664 F.3d at 662 (citation omitted).  All told, Haciosmanoglu's complaint inadequately pleads extenuating circumstances.

---

[4] Haciosmanoglu's response brief attempts to proffer an additional extenuating circumstance, contending that he played a "minimal role" in the offense.  Doc. No. 11, p. 12.  "However, it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) (citation omitted).  Thus, the Court cannot consider Haciosmanoglu's belatedly raised extenuating circumstance.  Even if the Court could do so, neither the complaint nor the underlying record supports an inference for a diminished role in the disorderly conduct offense.

Because he accrued a conviction for an unextenuated criminal offense that adversely reflects on his moral character during the statutory period, Haciosmanoglu has failed to plausibly allege that the INA entitles him to naturalize. For the same reasons, the complaint cannot establish that USCIS's decision violated the APA as arbitrary, capricious, or contrary to law. See 5 U.S.C. § 706. The complaint is similarly insufficient to warrant a declaratory judgment.

## IV. CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, the Defendants' motion to dismiss (Doc. No. 9) is **GRANTED**. The complaint is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated this 2nd day of July, 2021.

/s/ Peter D. Welte
Peter D. Welte, Chief Judge
United States District Court